IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-02636-PAB-NYW

EDDIE C. TANG,

      Plaintiff,

v.

HSS, INC.,

      Defendant.

_____

## ORDER
_____

This matter is before the Court on the Motion for Summary Judgment [Docket

No. 46] filed by defendant HSS, Inc. ("HSS").  Plaintiff brings claims for discriminatory

discharge and discipline under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C.

§ 621 *et seq*. ("ADEA"), and for denial of overtime in violation of 42 U.S.C. § 1981.  The

Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## I.  BACKGROUND[1]

### A.  Plaintiff's Discipline and Discharge

Plaintiff Eddie Tang is a Chinese-American who was born on February 3, 1951.

Docket No. 46 at 1, ¶ 1.  HSS hired plaintiff as a security officer in June 2005 and

assigned him to the Denver Wastewater Management job site.  *Id.* at 2, ¶¶ 2-3.  One of

---

[1]The following facts are undisputed unless otherwise indicated.  To the extent
that plaintiff partially disputes one of defendant's purportedly undisputed facts, unless
otherwise indicated, the Court will recite only the undisputed portion.

plaintiff's responsibilities as a security officer was to make sure that a facility's exterior

entrances and interior offices were locked and secure using the facility keys.  *Id.* ¶ 5.

HSS's employee handbook, which plaintiff received, states that

> [s]ecurity officers responsible for the duty key ring must sign keys in and out
> from the beginning of their duty shift until their shift ends.  The keys and key
> ring must remain with the employee at all times and should never be loaned
> to anyone, including a fellow employee.  It is extremely important that good
> judgment be used in safeguarding keys, access cards, and combination
> cards.  Lost keys can have large financial consequences.  Employees are
> responsible for reimbursing HSS for lost keys and costs associated with re-
> keying a facility.

*Id.* ¶ 6.

On November 12, 2010, a set of security keys was reported missing, and the

keys remained missing at the beginning of plaintiff's shift on November 14, 2010 (the

"November 12 incident").  Docket No. 46 at 3, ¶ 8; Docket No. 48 at 1, ¶ 8.  Plaintiff did

not contact his supervisor or complete an incident report regarding the missing keys, *id.*

¶ 9, and plaintiff electronically signed a "Security Event Report" that incorrectly

confirmed that plaintiff and a co-worker had received the missing set of keys.  *Id.* ¶ 10;

*see also* Docket No. 46-1 at 21, 133:15-134:2; Docket No. 46-3 at 1.[2]  Following this

incident, plaintiff received a written warning, which stated: "[i]f there is not immediate

---

[2]Plaintiff disputes that he "signed" the Security Event Report because his name
is typed and not handwritten and because plaintiff testified at his deposition that he was
uncertain if he typed in his name on the form or someone else typed it in.  Docket No.
47 at 2, ¶ 10.  HSS argues that plaintiff later testified unambiguously that he signed the
report.  Docket No. 48 at 2, ¶ 10.  The Court agrees with HSS that plaintiff's signature
on the report is undisputed.  Plaintiff first testified that he "probably" entered his initials
on the report and that it "could have been" him who entered his electronic signature on
the report, *see* Docket No. 46-1 at 5, 33:20-22; 34:16-18, and later testified
unambiguously that he signed the report.  *Id.* at 21, 133:13-14 ("A. Yeah, I did sign that
because two people share the same report.").

and sustained improvement in performance/inappropriate behavior . . . or if there are any other incidents of misconduct/inappropriate behavior, you may be subject to further disciplinary action, up to and including termination." Docket No. 46 at 3, ¶ 12. Seven other employees received substantially identical written warnings for their roles in the incident. *Id.* at 3-4, ¶ 13. Six of the seven employees who received written warnings had less seniority than plaintiff, *id.* at 4, ¶ 16, and none of the seven employees were Chinese. *Id.* ¶ 18.

At the beginning of his shift on January 1, 2011, plaintiff signed out and received possession of a key ring. *Id.* ¶ 19. Although company policy requires security officers to keep key rings with them at all times during their shifts, *id.* ¶ 20, at some point plaintiff left his keys on the security desk. *Id.* ¶ 22. This resulted in the keys being misplaced. *Id.* at 5, ¶ 25. At the end of plaintiff's shift, plaintiff signed a daily activity report that certified (incorrectly) that plaintiff had "returned all equipment." *Id.* ¶ 26. The missing keys were located approximately one hour after plaintiff's shift ended. *Id.* ¶ 27.

Following the January 1, 2011 incident, Chris Doyscher, HSS site supervisor, and Kimberlie Pascoe, HSS program manager, conducted an investigation. Docket No. 46 at 5, ¶ 29. At the conclusion of the investigation, Ms. Pascoe recommended terminating plaintiff's employment due to plaintiff's falsification of records and neglect of duties during the January 1, 2011 incident, in combination with his recently-issued written warning for his role in the November 12 incident. *Id.* ¶ 30. Ms. Pascoe discussed her recommendation with her "direct reports," presumably her supervisors, and human resources and, as a group, they agreed to terminate plaintiff's employment.

*Id.* at 6, ¶ 31.  HSS terminated plaintiff's employment on January 5, 2011.  *Id.* ¶ 32.

HSS does not have a formal progressive disciplinary policy, and punishments for violation of company policies are determined on a case by case basis.  Docket No. 46 at 6, ¶¶ 56-57.  Following his discharge, plaintiff's position was filled by a non-Chinese employee who was four years younger.  *Id.* at 7, ¶ 58.  Other than the two incidents concerning lost keys, plaintiff was proficient in his job and received the highest possible ratings in all categories in two six-month evaluations that took place before his discharge.  *Id.* at 8, ¶ 67.

Plaintiff alleges that his termination was based on national origin because he received "different treatment" from other employees.  Docket No. 46 at 6, ¶ 34.  Plaintiff testified that his supervisor informed him that the facility manager at Denver Wastewater Management had referred to plaintiff as "Mr. Panda."  Docket No. 46-1 at 18, 104:1-18.  Plaintiff also testified that people repeatedly called him "China man," but could not identify any individual who did so, *id.* at 19, 106:9-19, and that his co-workers – but not his supervisors – referred to him occasionally as "Chinese delivery man" or "Panda Express."  *Id.* at 24, 170:8-18; 172:19-22.  Plaintiff never made any complaints to HSS about any derogatory comments.  *Id.* at 25, 173:24-174:5.

### B.  Denial Of Overtime

Plaintiff alleges that, before Mr. Doyscher became his supervisor in July 2007, he was denied the opportunity to work overtime.  Docket No. 46 at 7, ¶¶ 44-45.  Plaintiff testified that his colleague, Dave Armstrong, received all available overtime because he was the son-in-law of the facility manager.  *Id.* ¶ 46.  Plaintiff did, however, work

overtime regularly when required to cover shifts of no-shows and co-workers on vacation. *Id.* ¶ 48.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

However, "[w]hen, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998)) (internal quotation marks omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513,

1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).  The

nonmoving party may not rest solely on the allegations in the pleadings, but instead

must designate "specific facts showing that there is a genuine issue for trial."  *Celotex,*

477 U.S. at 324; *see* Fed. R. Civ. P. 56(e).  "To avoid summary judgment, the

nonmovant must establish, at a minimum, an inference of the presence of each

element essential to the case."  *Bausman,* 252 F.3d at 1115 (citing *Hulsey v. Kmart,*

*Inc.,* 43 F.3d 555, 557 (10th Cir.1994)).  "In applying this standard, we view all facts and

any reasonable inferences that might be drawn from them in the light most favorable to

the nonmoving party."  *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th

Cir. 1994).

## III.  ANALYSIS

### A.  Discriminatory Discharge

Under Title VII, it is unlawful for an employer "to discharge any individual, or

otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race, color,

religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The ADEA prohibits

employers from discriminating against any "individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's age."  29

U.S.C. § 623(a)(1).  It protects employees who are forty years of age or older.  *Id.* at

631(a).

Plaintiff does not advance direct evidence that he was fired because of his race,

national origin, or age, but plaintiff may prove both his Title VII and his ADEA claims

indirectly, using the *McDonnell Douglas* three-part burden-shifting framework.  *See*

*Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278 (10th Cir. 2010);  *Hysten v.*

*Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1180 (10th Cir. 2002);  *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973).   Under the *McDonnell Douglas*

framework, the plaintiff bears the initial burden of establishing a prima facie case of

discrimination.   *Jones*, 617 F.3d at 1278.   In order to make a prima facie case of

disparate treatment, a plaintiff must show three elements: (1) that he belonged to a

protected class; (2) that he suffered an adverse employment action; and (3) that the

adverse employment action occurred under circumstances giving rise to an inference of

discrimination.   *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011).[3]  If the plaintiff

succeeds in establishing a prima facie case, the burden shifts to the defendant

employer to state a legitimate, nondiscriminatory reason for its adverse employment

action.   *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1321 (10th Cir. 2004).   If the

defendant produces a legitimate, nondiscriminatory reason, then the court must grant

---

[3] The Tenth Circuit has noted that the prima facie case is sometimes articulated
differently depending on the specific claim before the court.  *See Luster*, 667 F.3d at
1095 n.1; *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1307 (10th Cir. 2005).  In
discriminatory termination cases, the prima facie case is often broken into four
elements.  *See, e.g.*, *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136,
1150 (10th Cir. 2008) ("Generally stated, a prima facie case of discriminatory discharge
under Title VII requires plaintiff to demonstrate that she (1) belongs to a protected
class; (2) was qualified for her position; (3) was discharged; and (4) her position was
not eliminated after her discharge.").  No matter the precise formulation, "[t]he critical
prima facie inquiry in all cases is whether the plaintiff has demonstrated that the
adverse employment action occurred 'under circumstances which give rise to an
inference of unlawful discrimination.'"  *Id.* at 1151 (quoting *Plotke v. White*, 405 F.3d
1092, 1100 (10th Cir. 2005)); *see also O'Connor v. Consol. Coin Caterers Corp.*, 517
U.S. 308, 312 (1996) (in the ADEA context, "the prima facie case requires *evidence
adequate to create an inference that an employment decision was based on an illegal
discriminatory criterion*") (citation and quotation omitted) (emphasis in original).

the defendant summary judgment unless the plaintiff can show a genuine issue of

material fact as to whether the stated reason for the adverse action is pretextual.  *Id.*

HSS does not appear to dispute the first two elements of the prima facie case.

Instead, HSS argues that plaintiff cannot establish facts giving rise to an inference of

discriminatory intent.  *See* Docket No. 46 at 10.  Although plaintiff's burden at this stage

is light, *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1171 (10th Cir. 2007), plaintiff

must at a minimum present evidence sufficient to draw an inference that the adverse

employment action was motivated, at least in part, by discriminatory intent.  *Adamson*,

514 F.3d at 1151 ("The critical prima facie inquiry in all cases is whether the plaintiff has

demonstrated that the adverse employment action occurred under circumstances which

give rise to an inference of unlawful discrimination.") (citation and quotation omitted).

"There must simply be a logical connection between each element of the prima facie

case and the inference of discrimination."  *Plotke*, 405 F.3d at 1100 (citation omitted).[4]

The real question is "whether a plaintiff has shown actions taken by the employer from

which one can infer, if such actions remain unexplained, that it is more likely than not

---

[4]HSS raises plaintiff's lack of evidence of discriminatory intent both in relation to plaintiff's prima facie case and in its analysis of pretext.  *See* Docket No. 46 at 10, 13. The Tenth Circuit has noted a "tension" in its treatment of the requirement that a plaintiff demonstrate circumstances suggestive of discrimination.  *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 n.5 (10th Cir. 2005).  Some cases treat the requirement as part of a plaintiff's prima facie case, while others conduct this analysis as "part of the analytically subsequent inquiry into the employer's stated basis for the adverse action and the plaintiff's opposing demonstration of pretext."  *Id.* (citations omitted).  "Regardless of whether we analyze the plaintiff's evidence in reference to the prima facie case or the business justification versus pretext inquiry, if the court correctly concludes that the evidence of discrimination/pretext fails as a matter of law, summary judgment for the defendant is the proper result."  *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 n.5 (10th Cir. 2007) (internal quotations and ellipses omitted).

that such actions were based on a discriminatory criterion." *Hysten v. Burlington N. &*

*Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002) (internal quotation and citation

omitted).

The Court finds that plaintiff fails to satisfy the threshold requirement of

introducing evidence sufficient to infer a discriminatory intent.  Nowhere in his response

does plaintiff identify, much less substantiate with evidence, the precise circumstances

that he believes give rise to an inference that his discharge was motivated in part by a

discriminatory intent.  *See* Docket No. 47.[5]  Although plaintiff did not provide his own

evidence of discriminatory intent, plaintiff did admit HSS's characterization of why he

claims that his termination was based on his race and national origin.  *See* Docket No.

47 at 3-4 (admitting SMF Nos. 34 and 36).  The Court will therefore consider whether

the basis for plaintiff's discrimination claim, as characterized by HSS's undisputed facts,

"give[s] rise to an inference of unlawful discrimination."  *Adamson*, 514 F.3d at 1151.

The Court concludes that it does not.

Plaintiff testified at his deposition that he believed his termination was made for

_____

[5]Plaintiff notes in response to HSS's Statement of Undisputed Material Facts
("SMF") No. 37 that plaintiff testified in his deposition that his supervisor, Ken Hamlin,
referred to him as "China man."  Docket No. 47 at 4, ¶ 37.  Plaintiff does not, however,
identify this comment as a basis for inferring that his discharge was motivated by
discriminatory intent.  In fact, plaintiff's deposition testimony, taken in context, is at best
ambiguous concerning whether plaintiff considered Mr. Hamlin's comments to be
derogatory.  Docket No. 46-1 at 25, 173:8-16 ("[Mr. Hamlin] always make a comment, I
don't want other people say about you, Hey there China man. . . .  I got nothing
–nothing say bad about, you know, Kent Hamblin.").  Moreover, even if the Court
inferred that Mr. Hamlin's comment was derogatory and reflective of animus, there is no
indication that Mr. Hamlin had anything to do with the decision to terminate plaintiff's
employment, which plaintiff has admitted was made by Ms. Pascoe, her supervisors,
and human resources.  *See* Docket No. 47 at 3 (admitting SMF # 31).

discriminatory reasons because "obviously [he] got different treatment" than his co-workers.  Docket No. 46-1 at 17, 98:11-12.  Regarding his race and national origin, plaintiff testified that an unidentified supervisor whose last name began with the letter M referred to him as "Mr. Panda," *see* Docket No. 46-1 at 19, 106:22-107:10, *id.* at 18, 104:1-16; that certain people called him "China man" all the time, but plaintiff did not identify any of the individuals who did so, either by name or by title, *see id.* at 19, 106:5-19; and that co-workers had referred to him as a "Chinese food delivery man," but that no supervisor did so.  *Id.* at 24, 172:13-22.  These vague complaints, not tied to the incidents in question, are insufficient to raise an inference of discriminatory discharge.

Plaintiff can satisfy the light burden of pleading facts that give rise to an inference of discrimination by "present[ing] evidence of preferential treatment given to employees outside the protected class, actions or remarks made by a decision maker, or circumstances related to the timing or sequence of events leading to plaintiff's termination."  *Villalva v. Dillon Companies, Inc.*, No. 12-cv-02005-PAB-CBS, 2013 WL 6804585 at *5 (D. Colo. Dec. 23, 2013) (citing *Plotke*, 405 F.3d at 1100-01) (internal quotations and alteration marks omitted).  Plaintiff has not done any of these things. Critically, although plaintiff complains of offensive remarks by co-workers or unidentified supervisors, he does not suggest that any of the individuals who were responsible for the decision to terminate his employment – Ms. Pascoe, her direct supervisors, and human resources – either made those remarks or were otherwise motivated by discriminatory intent.  *See Zoutomou v. Copper*, 550 F. App'x 647, 649 (10th Cir. 2013) (affirming finding that plaintiff could not make out a prima facie case of discrimination

due to race or national origin where the plaintiff "failed to establish any nexus between the allegedly discriminatory statements and [defendant's] decision to terminate his employment"): *see also Heslet v. Westar Energy, Inc.*, 2005 WL 752147 at *9 (D. Kan. Mar. 29, 2005) ("Stray remarks, remarks made by non-decision makers, and remarks made by decision makers that are unrelated to the actual decision making process do not demonstrate discriminatory intent").

Regarding his ADEA claim, the only evidence cited in plaintiff's response is plaintiff's deposition testimony that he believed his termination was due to his age because "they can . . . hire some people younger, you know, they can pay less." Docket No. 46-1 at 17, 99:10-12; *see also* Docket No. 47 at 3, ¶ 33.  At his deposition, plaintiff testified that he believed his high seniority was the reason he was discriminated against.  *See* Docket No. 46-1 at 8, 45:4-11 ("Q.  You believe it's because of your age. And why do you believe that?  A.  Because always, you know, when I – I have high seniority.  Q. Because of your seniority?  A. Yes.  Q. Any other reasons?  A.  For the age, no, sir.").   Plaintiff's evidence is insufficient to raise an inference of age discrimination.  Summary judgment is appropriate where "[t]he record contains no independent evidence, beyond [plaintiff's] mere conjecture, that would allow a reasonable factfinder to . . . infer that . . . discrimination was the actual motivation for [plaintiff's] termination."  *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1172 (10th Cir. 2007); *see also Velasquez v. Philips Electronics North Am. Corp.*, 2015 WL 505628 at *10 (D. Kan. Feb. 6, 2015) (holding that there was no prima facie case of age discrimination where "plaintiff cite[d] no evidence to connect [the] facts to some evidence of age bias" and "relie[d] only on his own speculation to find an inference of

11

age discrimination"). Moreover, the mere fact that plaintiff was replaced by a younger worker, without more, is insufficient. "[Plaintiff] is not automatically entitled to the presumption that [defendant] acted with discriminatory animus because he was replaced, upon his termination, by a younger individual. Instead, he must come forward with admissible evidence, under a summary judgment standard, 'adequate to create an inference that the employment decision at issue was *based on his age*.'" *Maxey v. Rest. Concepts II, LLC*, 654 F. Supp. 2d 1284, 1294 (D. Colo. 2009) (quoting *O'Connor*, 517 U.S. at 312) (alteration marks omitted) (emphasis in original).

Because plaintiff has not shown "a logical connection between each element of the prima facie case and the inference of discrimination," *Plotke* 405 F.3d at 1100, summary judgment is appropriate on his Title VII and ADEA claims for discriminatory discharge.

### 1. Pretext

Because the Court has determined that plaintiff has failed to satisfy the threshold requirement of producing evidence of circumstances suggestive of discrimination, the Court need not address the issue of whether HSS's proffered legitimate non-discriminatory reason for terminating plaintiff was pretextual. *PVNF*, 487 F.3d at 800, n.5 (noting that summary judgment is appropriate if the evidence of circumstances suggestive of discrimination fails as a matter of law). Nonetheless, the Court will address the remainder of the three-part *McDonnell-Douglas* burden-shifting framework.

HSS claims that it terminated plaintiff, following Ms. Pascoe's recommendation, due to two instances of misconduct regarding security of keys that occurred within a two

month period.  Docket No. 46 at 12.  Because HSS's proffered reason is not facially prohibited, HSS has satisfied its burden to produce legitimate, non-discriminatory reasons for terminating plaintiff's employment.  *See Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2003).

Since HSS has met its burden to produce a legitimate non-discriminatory reason for terminating plaintiff's employment, the burden shifts back to plaintiff to show that HSS's stated reason is pretext for unlawful discrimination.  To demonstrate pretext, plaintiff must produce evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for" its termination decision.  *See Crowe v. ADT Security Servs., Inc.*, 649 F.3d 1189, 1196 (10th Cir. 2011).  Plaintiff may also defeat summary judgment by showing that there is a genuine dispute of material fact as to whether defendant's explanations for terminating his employment are pretextual.  *See Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1318 (10th Cir. 2006).

### a.  Disparate Treatment

Plaintiff argues that he was treated differently from other similarly situated employees.  Docket No. 47 at 12-14.  Specifically, plaintiff argues that (1) his co-worker, Robert Gardiner, a white, male security officer who received the same warning as plaintiff for his role in the November 12 incident, lost his keys on another occasion and was not terminated, and (2) another co-worker, Rich Benavidez, who was responsible for the lost keys during the November 12 incident, was not terminated following a second infraction involving keeping track of keys.  *Id.* at 13.

13

Individuals are considered "similarly situated" when they deal with the same supervisor and are subjected to the same standards governing performance, evaluation, and discipline. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). To show disparate treatment, a plaintiff must show that he was similarly situated to his comparators in "all relevant respects," and courts traditionally "compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (citation omitted). Moreover, even employees who are similarly situated must have been disciplined for conduct of "comparable seriousness" in order for their disparate treatment to be relevant. *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1230 (10th Cir. 2000). "The burden is on the plaintiff to demonstrate he is similarly situated to the employees to whom he is comparing himself." *Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1178 (10th Cir. 2000).

While it is undisputed that Mr. Gardiner and Mr. Benavidez were supervised by the same individual and were subject to the same standards governing performance during the year 2010, *see* Docket No. 47-9 at 2, the Court finds that plaintiff has not established that his conduct was of comparable seriousness to that of Mr. Gardiner or Mr. Benavidez. Regarding Mr. Gardiner, the only evidence of an additional infraction regarding keys is plaintiff's testimony that Mr. Gardiner lost his keys sometime "before or after" the November 12 incident. Docket No. 47-1 at 2, 67:25-68:2. This testimony, without specific details or corroborating evidence, is an "unsubstantiated allegation[]"

14

that "carr[ies] no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also Larson v. United Air Lines*, 482 F. App'x 344, 347-48 (10th Cir. 2012) (rejecting plaintiff's testimony that "is filled with unsubstantiated allegations"). Plaintiff could not provide an estimate of when Mr. Gardiner lost his keys and did not testify that Mr. Gardiner falsely reported that the keys were accounted for. *See id.* Given this lack of detail, the Court cannot evaluate whether Mr. Gardiner's conduct was of comparable seriousness to plaintiff's, since HSS's stated reason for terminating plaintiff was his repeated violation of HSS's documentation policies and the short period between plaintiff's first and second infractions. *See* Docket No. 46 at 14.

Likewise, plaintiff has not met his burden of showing that Mr. Benavidez's offenses were of comparable seriousness. On June 11, 2011, Mr. Benavidez was escorted off the premises, apparently for not having the facility keys with him while on duty. Docket No. 47-13 at 4. According to Mr. Benavidez's writeup of the event (the only evidence of the incident that plaintiff cites), Mr. Benavidez left his keys at the main desk for another patrol officer who was not present at the beginning of the shift. *Id.* The Court finds that this does not create an issue of material fact as to whether HSS's proffered reason is pretextual. The Tenth Circuit case *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220 (10th Cir. 2000), is instructive. In *Kendrick*, an African-American employee who was fired based on a supervisor's report that the employee had "charged at [the supervisor] and pushed him and then verbally abused him" claimed that he was treated differently from a white employee who had threatened a

15

supervisor with a crowbar.  *Id.* at 1223, 1232.  The white employee was suspended, but was eventually reinstated without back pay on the condition that he agree to view anger aggression videos and serve a six-month probationary period.  *Id.* at 1232-33.  The Tenth Circuit found that the "circumstances were . . . different in significant respects" because, in part, the plaintiff had made physical contact with the supervisor while the alleged comparator did not.  *Id.* at 1233.  The Tenth Circuit expressed some doubts about whether the white employee's actions were "just as threatening" as the plaintiff's, but affirmed an order granting summary judgment, concluding that "[a] company must be allowed to exercise its judgment in determining how severely it will discipline an employee for different types of conduct."  *Id.*

Here, as in *Kendrick*, Mr. Benavidez's second infraction differs from the infraction that led to plaintiff's termination in significant respects.  Plaintiff was terminated for losing his keys and falsely reporting that they were accounted for.  *See* Docket No. 46 at 5, ¶ 30 (noting that plaintiff was terminated "because of his falsification of Company documents and neglect of duties regarding his failure to control key ring #1").  Mr. Benavidez did not lose his keys, but rather left them at the main desk for a co-worker. Docket No. 47-13 at 4.  Moreover, there is no evidence that Mr. Benavidez made a false report concerning the keys' whereabouts.  These differences are sufficient to require the Court to defer to HSS's judgment in "determining how severely it will discipline an employee for different types of conduct."  *Kendrick*, 220 F.3d at 1233.

### b.  Dispute of Material Fact Regarding Falsification of Records

Plaintiff argues that there is a dispute of material fact concerning whether he

16

intentionally falsified company records.  Docket No. 47 at 14.  According to plaintiff, he was fired in part for "falsification of company documents," but, at the time he filled out the relevant report, he did not know that the information he put on the form was untrue. *Id.* at 14-15.  Plaintiff argues that summary judgment is inappropriate because "[a] material factual dispute exists as to whether or not [plaintiff] knew or should have known the report that he filled out was false at the time[.]"  *Id.* at 15.  The Court disagrees. "The relevant inquiry is not whether the employer's proffered reasons were . . . correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs."  *Rivera v. City and Cnty. of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (internal quotation and alteration omitted); *see also Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1251-52 (10th Cir. 2006) (holding that a finding of no pretext is appropriate where the rationale for an employment decision was honestly held, even where plaintiff introduces evidence that the rationale was false).  A dispute of material fact as to plaintiff's subjective mindset when he signed the report, therefore, is irrelevant.  Plaintiff does not argue or introduce evidence suggesting that Ms. Pascoe did not honestly believe that plaintiff falsified records when she recommended his termination.  Thus, plaintiff has not established a genuine dispute of material fact as to whether HSS's proffered reason for terminating his employment was pretextual.

## B.  Discriminatory Discipline

Plaintiff argues that HSS improperly discriminated against him because of his race, national origin, and/or age in issuing the written warning for plaintiff's role in the November 12 incident.  *See* Docket No. 47 at 15.  In discriminatory discipline cases,

"[a]n inference of discrimination may be raised by evidence that a plaintiff was . . .
treated less favorably than similarly situated employees who are not in the plaintiff's
protected class."  *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1082 (10th Cir.
1999).

Plaintiff argues first that one of his co-workers, Randy Clark, was only disciplined
for a single falsification of records during the November 12 incident when evidence
shows that he in fact certified that he received the missing keys twice, on November 12
and November 14, 2010.  *See* Docket No. 47 at 16.  This does not create a dispute of
material fact.  Plaintiff does not dispute that, in addition to plaintiff, seven other
employees received substantially identical written warnings for their role in the
November 12 incident.  *See* SMF No. 13.[6]  None of those seven employees were
Chinese, and six of them had less seniority than plaintiff.[7]  The fact that Mr. Clark may
have falsely certified receipt of the missing keys on two occasions while the rest of the
disciplined employees made that same certification only once does not create a dispute
of material fact as to whether plaintiff was treated less favorably than other similarly
situated employees where, as here, it is undisputed that all of the employees who were

_____

[6]Although SMF No. 13 is disputed, plaintiff does not dispute that the other seven
employees received nearly identical warnings.  Plaintiff "disputes" SMF No. 13 only to
point out that the other seven security officers were disciplined for conduct related to
the incident that occurred on November 12 and 13, while plaintiff's actions took place
on November 14.  *See* Docket No. 47 at 2.

[7]Plaintiff testified that his high seniority was the sole reason he was discriminated
against due to his age.  *See* Docket No. 46-1 at 8, 45:4-11 ("Q.  You believe it's
because of your age.  And why do you believe that?  A.  Because always, you know,
when I – I have high seniority.  Q. Because of your seniority?  A. Yes.  Q. Any other
reasons?  A.  For the age, no, sir.").

18

involved in the incident received identical discipline.

Plaintiff also claims that the reason that he received the written warnings was false.  Specifically, plaintiff claims that (1) he testified that he was not required to report the lost keys because his supervisor was already aware of them, (2) plaintiff did not "sign" the security event report because his name is typed, not handwritten, and (3) there is a dispute of material fact as to whether plaintiff intentionally falsified the report. *See* Docket No. 47 at 16-17.  As discussed above, plaintiff does not properly dispute that he signed the security event report, *supra* n.2, and plaintiff's subjective intent and the reasons for not reporting the missing keys are irrelevant.  *See supra* Part III(A)(1)(b).  Plaintiff introduces no evidence that HSS did not honestly believe, at the time of his termination, that plaintiff violated company policy when he failed to report the missing keys and signed a report that certified that all equipment was accounted for. Accordingly, plaintiff has not established a dispute of material fact concerning whether HSS's reason for disciplining him was pretextual.

### C.  Denial Of Overtime

Defendant argues that plaintiff's claim that he was denied the opportunity to work overtime before Mr. Doyscher became his supervisor is barred by the statute of limitations. The statute of limitations for claims brought pursuant to 42 U.S.C. § 1981 is four years.  *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1152 (10th Cir. 2008) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004)).  Plaintiff admits that his denial of overtime claim is based on conduct that occurred before Mr. Doyscher

became his supervisor and that Mr. Doyscher became his supervisor in July 2007.[8] Plaintiff did not initiate this lawsuit until September 2013, more than six years after Mr. Doyscher became his supervisor.  *See* Docket No. 1.  Plaintiff does not respond to HSS's argument, *see* Docket No. 47, and appears to have abandoned this claim.  *See* Docket No. 47.  Because it is undisputed that plaintiff's claim that he was denied overtime accrued, at the latest, in July 2007 (and therefore expired no later than July 2011), his claim is barred by the four-year statute of limitations.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant HSS, Inc.'s Motion for Summary Judgment [Docket No. 46] is **GRANTED**.  It is further

**ORDERED** that plaintiff's first, second, and third claims for relief are dismissed with prejudice.  It is further

**ORDERED** that, within 14 days of the entry of judgment, defendant may have its costs by filing a bill of costs with the Clerk of the Court.  It is further

**ORDERED** that this case is dismissed in its entirety.

---

[8]*See* Docket No. 47 at 5 (not disputing SMF Nos. 44-45).

DATED March 20, 2015.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge